IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SOUTHERN FARM BUREAU CASUALTY
INSURANCE COMPANY                                                           PLAINTIFF

v.                                        Case No. 2:15-CV-02107

RICHARD A. HAMMOND; BARBARA A. HAMMOND;
SETH CREED, as special administrator of the estate of
Richard W. Hammond, deceased; and BANK OF THE
OZARKS, as special administrator of the estate of Jaime
Christine Shipman, deceased                                                   DEFENDANT

## OPINION AND ORDER

Currently before the Court are cross motions for summary judgment (Docs. 15 and 18). Also

before the Court are the parties' responsive filings, and various documents and exhibits in support.

Having reviewed the filings, the Court finds that the motions should be denied.

I.      **Legal Standards**

In determining whether summary judgment is appropriate, the burden is on the moving party

to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d

602 (8th Cir. 1999). The same standard applies where, as here, the parties file cross-motions for

summary judgment on an issue. Each motion should be reviewed in its own right, with each side,

respectively, "entitled to the benefit of all inferences favorable to them which might reasonably be

drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983);

*see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). In order for there to

be a genuine issue of material fact, the evidence must be "such that a reasonable jury could return

a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II.    Background

This is a declaratory judgment action regarding coverage under a general liability insurance

policy issued by Plaintiff Southern Farm Bureau Casualty Insurance Company ("Southern Farm

Bureau") to Defendants Richard A. Hammond ("Richard") and Barbara A. Hammond ("Barbara").

The policy at issue is attached as an exhibit to the complaint.  (Doc. 1-2).  This action arises out of

a fatal four-wheeler accident that occurred on July 30, 2011, on the Hammonds' property in

Mountainburg, Arkansas, resulting in the deaths of their son, Richard W. Hammond ("Ricci") and

Jaime Christine Shipman ("Jaime").  Defendant Bank of the Ozarks, on behalf of Jaime's estate,

brought a wrongful death action against the Hammonds and Ricci's estate.  This declaratory

judgment action concerns coverage for the accident only as it relates to Ricci's estate.  Southern

Farm Bureau argues that Ricci was not an insured under the Hammonds' general liability policy and

that, therefore, there is no coverage under the Hammonds' policy for Ricci for the accident.

The following facts are not in dispute: Jaime got off work at around 11:00 p.m. on July 29,

2011, made arrangements for her kids to stay overnight with her brother, and went to visit Ricci at

the Hammonds' property, where Ricci lived with his daughter.  Jaime and Ricci had been seeing

each other socially for a couple of months.  Ricci's nephew, Shain McClemore (who was close in

age to Ricci), and his daughters were also present on the Hammonds' property on the evening of July

29.  The group swam at the lake on the property and then played pool at Ricci's residence until the

early morning hours of July 30.[1]  After the kids had gone to bed, Shain, Ricci, and Jaime went right outside of Ricci's house and talked for a while.  At some point, Ricci or Jaime encouraged Shain to take Jaime's four wheeler (her four wheeler was also present on the property in addition to the two owned by the Hammonds) for a drive.  Shain took the four-wheeler out for a ride and, when he returned, Shain could not find Ricci and Jaime at Ricci's residence.  Shain was the last known person to have seen Ricci and Jaime prior to the accident.

At some unknown time on July 30, 2011, Ricci and Jaime were involved in the four-wheeler accident at issue.  Photographs of the scene appear to show that the four wheeler went off an embankment near the lake on the Hammonds' property, flipped over, and Ricci and Jaime were killed as a result.  The Court notes here that the exact time of the accident is a fact that is disputed by the parties.  The four-wheeler Ricci and Jaime were using belonged to the Hammonds.  The Hammonds had purchased two four wheelers, identical in appearance, and gave one to Ricci, although both were used by Ricci and the Hammonds interchangeably.  The four-wheelers were bought by the Hammonds for use on the Hammonds' property, which they used for farming operations, including raising cattle.  Ricci and Jaime were not found until sometime in the late afternoon of July 30, 2011—approximately 12 hours after they had last been seen by Shain McClemore.

## III.    Analysis

The general liability policy at issue provides that Southern Farm Bureau agrees "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages

---

[1] The Hammonds had two residences on their property about 800 feet apart.  One residence was for Ricci, although Ricci generally spent most nights at his parents' residence with his daughter.

because of bodily injury . . . including death at any time resulting therefrom, sustained by any person." (Doc. 1-2, p. 5).  At issue in this case is whether Ricci qualified as an insured under a clause providing that "[e]ach of the following is also an insured: . . . (c) any other person while operating farm tractors, self-propelled farm machinery, or animal drawn farm vehicles or implements, in any of the named insured's operations covered by this policy and with the permission of [a named] insured . . . ." (Doc. 1-2, p. 18).  It is undisputed that Ricci was operating a four-wheeler on the Hammonds' property, with permission of the Hammonds, at the time of the accident. Southern Farm Bureau argues, however, that Ricci did not meet the definition of an additional insured in regard to the accident, because (1) he was not operating self-propelled farm machinery, and (2) he was not operating the four-wheeler in the insureds' operations.  Defendant Bank of the Ozarks argues to the contrary—that a four-wheeler is clearly self-propelled farm machinery and that "the named insured's operations" is a phrase that is at best ambiguous and should be construed against Southern Farm Bureau to broadly include, for instance, any use of farm machinery on the Hammond farm.

The law in Arkansas regarding the construction of insurance contracts is well-settled: "The language in an insurance policy is to be construed in its plain, ordinary, and popular sense.  If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of constructions . . . . If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer." *McGrew v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 371 Ark. 567 (2007) (internal citations omitted).

The Court first finds, as a matter of law, that the phrase "self-propelled farm machinery" is

-4-

unambiguous and that the four-wheeler was "self-propelled farm machinery" under a plain reading of the policy. That phrase is not specifically defined in the policy, and a common-sense interpretation of the phrase would clearly include a four-wheeler, which is self-propelled. It is also undisputed that the four-wheelers were bought by the Hammonds for use on their farm in the course of their farming operations. Southern Farm Bureau argues that the four-wheeler cannot be self-propelled farm machinery because they argue it fits the definition of an automobile, as defined elsewhere in the policy. This argument is a non-sequitur. Even assuming that the four-wheeler might meet the policy's definition of an automobile (which is not altogether clear), the language defining additional insureds does not exclude automobiles from coverage, and there is no reason to believe that an automobile cannot also be self-propelled farm machinery.

The Court next finds that the phrase "any of the named insured's operations covered by this policy" is ambiguous. The phrase is not defined anywhere in the policy. The policy is a general liability policy covering the Hammonds' property as well as up to 100 head of cattle. While "farm" and "farming" are common themes throughout the policy, it is not clear that the named insured's operations should be limited to farming operations. Furthermore, even if the language were to be so limited, the concept of farming operations itself is ambiguous. Even assuming the Court were to go a step further and accept that farming operations must, in this case, be operations related to the Hammonds' cattle business, the concept would still be ambiguous. Raising cattle would necessarily require ongoing general monitoring and maintenance of the property on which the cattle is raised. This could include activities as simple as surveying the property—an activity that could be (and likely would be) accomplished on a four-wheeler.

Finally, as both parties admit, they can each only speculate as to what Ricci and Jaime were

doing when the accident occurred.  Southern Farm Bureau speculates that Ricci and Jaime must have been merely socializing, based in part on the assumptions that the accident occurred in the wee hours of the morning, that Ricci and Jaime had been drinking,[2] and the fact that Ricci was shirtless (in July).  Southern Farm Bureau also argues that Ricci had not been given any specific instruction by his parents as to any farming operation to be performed on that day.  The Court notes that Ricci was thirty-four and it is not likely that he was given a direct order for every activity he did in relation to the Hammonds' cattle or other general farming operations.

Bank of the Ozarks speculates that the accident may have occurred later in the day and, no matter the time of the occurrence, that Ricci may have been checking on cattle or a spillway on the lake or any number of other tasks generally related to the Hammonds' "operations."  Bank of the Ozarks also argues that the Court should construe the phrase, as a matter of law, to broadly include any use of farm machinery on the Hammonds' property.  While the Court recognizes that ambiguous phrases should be construed against the insurer,[3] the Court cannot find that such a broad interpretation would be warranted in this case.  Such an interpretation would eviscerate the phrase "in any of the named insured's operations covered by this policy" of any meaning at all, a result that would be contrary to Arkansas law on construction of contracts.  *Continental Cas. Co. v. Davidson*, 250 Ark. 35, 42 (1971) (in determining the rights and liabilities of the parties to an insurance contract, "[l]egal effect must be given to all the language used").  The phrase should therefore, put some limitation on what use of self-propelled farm machinery may entitle a person to be an

---

[2] These facts are disputed, and furthermore the policy does not appear to exclude coverage for operations performed in the wee hours of the morning or after (or while) drinking alcohol.

[3] *McGrew*, 371 Ark. at 571.

additional insured under the policy.  The question remains open, however, as to what the extent of that limitation should be.

Keeping in mind the standard to be applied to motions for summary judgment, the Court finds that there remain genuine disputes of material fact precluding entry of summary judgment in this case.  These disputes include, but are not limited to: why Ricci and Jaime were riding the four-wheeler at the time of the accident and, ultimately, whether Ricci was using the four-wheeler "in any of the named insured's operations" covered by the general liability policy.

## IV.    Conclusion

For all the reasons set forth above, IT IS ORDERED that the parties' motions for summary judgment (Docs. 15 and 18) are DENIED.

This case remains set for trial to begin on April 19, 2016.

IT IS SO ORDERED this 24th day of March, 2016.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE